IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>UNITED STATES OF AMERICA</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CRIM. NO.   JKB-07-0149</td></tr>
<tr><td>ALLEN GILL,</td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Presently before the Court is Allen Gill's Motion to Vacate Convictions Under 28 U.S.C. § 2255 (ECF No. 186), as supplemented by subsequent filings. (ECF Nos. 196, 238.) In 2008, Gill pled guilty to one count of "Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, Cocaine and Heroin" in violation of 21 U.S.C. § 846 ("Count One") and three counts of "Murder as a Result of Possession and Discharge of Firearms in Furtherance of a Racketeering Act" in violation of 18 U.S.C. § 924(j) ("Counts Two–Four" or the "§ 924(j) Counts"). (*See* Plea Agreement, ECF No. 197-3; Judgment, ECF No. 170.) He was sentenced to 480 months of imprisonment on each count to run concurrently. (*See* Judgment.)

Gill now asks the Court to vacate his convictions on the § 924(j) Counts and hold a resentencing. (*See generally* Corrected Supp. Mot. Vacate Conviction (hereinafter "Mot. Vacate"), ECF No. 238.) Gill's Motion has been fully briefed and no hearing is required for its disposition. *See* Local Rules 105.6, 207 (D. Md. 2021). For the reasons set forth below, Gill's Motion to Vacate Convictions will be granted and his convictions and sentences on the § 924(j) Counts will be vacated. The Court will not conduct a resentencing, and the sentence on Count

One will remain in full force and effect. An Amended Judgment will issue reflecting these corrections.

## I.   *Factual and Procedural Background*

Gill, along with two co-defendants, was charged in an Indictment returned on March 27, 2007, (*see* ECF No. 1), which was superseded for the first time on December 6, 2007 and for the second time on May 6, 2008. (*See* ECF Nos. 41, 91.) The three Indictments alleged various violations of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, Cocaine, and Heroin), 18 U.S.C. § 924(o) (Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime), 21 U.S.C. § 841(a) (Possession with Intent to Distribute Cocaine Base), 18 U.S.C. § 924(c) (Possession of Firearms in Furtherance of a Drug Trafficking Crime), and 18 U.S.C. § 1959(a)(1) (Murder in Aid of Racketeering ("VICAR murder")).[1] (*See* ECF Nos. 1, 41, 91.) Specifically, the Second Superseding Indictment (i.e., the third charging document) charged Gill with three counts of VICAR murder. (ECF No. 91.)

On June 27, 2008, Gill pled guilty to a four-count Criminal Information that charged one violation of 21 U.S.C. § 846 and three violations of 18 U.S.C. § 924(j) (Possession of Firearm in Furtherance of Murder in Aid of Racketeering). (*See* ECF Nos. 148, 152.) Only the § 924(j) convictions are at issue in the instant Motion to Vacate.

The Information alleged common facts as to the § 924(j) Counts, including that Gill was a "member[ ] of the Latrobe narcotics and firearms organization, a criminal organization, which operated in Baltimore City and elsewhere, whose members engaged in the distribution of controlled substances and committed acts of violence[,]" and that "[t]he Latrobe organization including its leadership, members and associates, constituted an 'enterprise,' as defined by [18

---

[1] 18 U.S.C. § 1959 proscribes enumerated Violent Crimes in Aid of Racketeering ("VICAR"), including murder.

U.S.C. §] 1959(b)(2)[.]"  (Crim. Information, ECF No. 197-2, at 2.)  The Information further alleged that Gill was involved in the killings of Stewart Staggs (Count Two), Ramon Santana (Count Three), and Valencia Jones (Count Four) in aid of the Latrobe organization.  (*Id.* at 4–6.)  Other than the identities of the victims, the charging language of each of the three § 924(j) counts is identical.  (*Id.*)  The factual stipulation in Gill's plea agreement provided that, "[o]n November 15, 1999, Gill attempted to rob Stewart Staggs of his drug money and proceeds[,]" but "Staggs refused and Gill shot and killed him in the 900 block of Webb Court, right outside of Latrobe Homes."  (Plea Agreement at 5.)  It further provided that "[d]uring the drug conspiracy, Gill robbed other drug dealers of their drugs and money" and "[o]n April 9, 2003, [co-defendant Harry] Burton and Gill participated in the shooting of drug supplier Ramon Santana . . . after stealing his heroin."  (*Id.* at 4.)  Finally, it specified that on June 20, 2003, Gill "shot and killed Valencia Jones, based on the request and direction of Burton."  (*Id.*)

Gill was sentenced on September 19, 2008 to a stipulated sentence pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) of 480 months' imprisonment on each count, to run concurrently.  (*See* Judgment; Plea Agreement at 5.)  The written plea agreement contains a "waiver of appeal" provision that "waive[s] all rights conferred by 18 U.S.C. § 3742 to appeal the 40 year sentence[.]"  (Plea Agreement at 6.)

In 2016, Gill filed a *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 186).  The Court appointed counsel for Gill (ECF No. 191) and held the Motion in abeyance for several years pending the resolution of pertinent cases in the Supreme Court and Court of Appeals for the Fourth Circuit.  (ECF Nos. 193, 199, 209.)  Gill, through counsel, filed a Corrected Supplemental Motion to Vacate Convictions on May 30, 2022.  (ECF No. 238.)

## II.    Legal Standard

Section 2255 allows a federal prisoner to move to set aside a sentence on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. The petitioner in a § 2255 proceeding bears the burden of proving his entitlement to relief. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

## III.    Statutory Framework

The convictions at issue here involve a complex statutory regime that includes two layers of predicate offenses. Gill was convicted under 18 U.S.C. § 924(j), an essential element of which is "the commission of a § 924(c) violation[.]" *United States v. Roof*, 10 F.4th 314, 398 (4th Cir. 2021) (quoting *United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001)), *cert. denied*, 143 S. Ct. 303 (2022). Section 924(c), in turn, rests on the commission of a "crime of violence" in violation of federal law. *See United States v. Young*, 248 F.3d 260, 275 (4th Cir. 2001). Here, Gill's charged "crime[s] of violence" were VICAR murder, codified in 18 U.S.C. § 1959(a), which requires proof of a murder in violation of a state or federal law. *See United States v. Manley*, 52 F.4th 143, 149 (4th Cir. 2022). The parties' dispute centers on whether the underlying murder offenses on which the VICAR murders were predicated qualify as "crime[s] of violence" under § 924(c), and whether they therefore can sustain convictions under § 924(j). The Court will briefly outline these three statutes and the legal developments upon which Gill relies before addressing the issues raised in Gill's Motion and the Government's Opposition.

First, § 924(j) provides that, "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—(1) if the killing is a murder (as

defined in section 1111), be punished by death or imprisonment for any term of years or for life[.]"

Subsection (c) makes it unlawful to, "during and in relation to any crime of violence or drug

trafficking crime[2] . . . for which the person may be prosecuted in a court of the United States, use[ ]

or carr[y] a firearm, or . . . in furtherance of any such crime, possess[ ] a firearm[.]"  18 U.S.C. §

924(c)(1)(A).  Thus, § 924(j) has three essential elements: "(1) that [the defendant] committed the

predicate [§ 924(c) 'crime of violence'] offense; (2) that [the defendant] used the firearm during

and in relation to the [predicate 'crime of violence'] offense; and (3) that, in the course of using

that firearm, [the defendant] caused the murder of [another person]."  *United States v. Foster*, 507

F.3d 233, 245 (4th Cir. 2007).  Only the first element—the commission of a "crime of violence"—

is at issue in the instant Motion.

In this case, Gill was charged in each § 924(j) Count with "a crime of violence, to wit:

murder in aid of racketeering[.]"  (Crim. Information at 4–6.)  Though the Information does not

explicitly refer to the federal VICAR statute, the parties agree that the use of "murder in aid of

racketeering" in the Information is in reference to § 1959(a).  (Mot. Vacate at 3; Resp. Opp'n Mot.

Vacate, ECF No. 247, at 13.)  This statute proscribes several enumerated violent crimes (including

murder) in aid of racketeering, and establishes five elements necessary for a VICAR conviction:

> (1) that there be an "enterprise," as defined in § 1959(b)(2); (2) that the enterprise
> be engaged in "racketeering activity," as defined in 18 U.S.C. § 1961; (3) that the
> defendant have committed [a murder]; (4) that the [murder] have violated state or
> federal law; and (5) that the [murder] have been committed for a designated
> pecuniary purpose or "for the purpose of gaining entrance to or maintaining or
> increasing position in [the] enterprise."

*Manley*, 52 F.4th at 147, 149 (quoting 18 U.S.C. § 1959(a)).  The underlying murder in violation

of state or federal law "is the key conduct element in determining if the VICAR offense"

---

[2] Gill's convictions are premised on "crime[s] of violence," not "drug trafficking crime[s]." (Crim. Information at 4–6.)

constitutes a "crime of violence" under § 924(c). *Cousins v. United States*, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016).

Section 924(c) defines "crime of violence" as a felony offense that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A) (the "elements clause" or "force clause"), or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B) (the "residual clause"). In *Johnson v. United States*, the Supreme Court held that the nearly identical residual clause defining "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague in violation of due process. 576 U.S. 591, 594, 606 (2015). In *United States v. Davis*, the Supreme Court extended this reasoning to § 924(c) and struck its residual clause as unconstitutionally vague. 139 S. Ct. 2319, 2336 (2019). The Fourth Circuit has since held that *Davis* established a substantive rule that applies retroactively on collateral review. *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021).

Thus, to qualify as a § 924(c) "crime of violence," the predicate offense must satisfy the elements clause. Courts apply the "categorical approach" to determine whether a predicate offense qualifies as a "crime of violence" based on the elements of the offense at issue, without regard to the facts underlying a conviction in a particular case. *United States v. Jackson*, 32 F.4th 278, 284 (4th Cir. 2022). Further, the required "use of force" element must require "a higher degree of intent than reckless, negligent, or merely accidental conduct." *Roof*, 10 F.4th at 399 (citing *Borden v. United States*, 141 S. Ct. 1817, 1824 (2021) (plurality opinion)). Gill argues that the predicate murder offenses here cannot constitute "crime[s] of violence" under § 924(c), and by extension § 924(j), following *Davis*.

6

## IV.   *Analysis*

As a preliminary matter, the Court will address the Government's argument that Gill waived the right to bring this *Davis*-based challenge by entering an unconditional guilty plea. The Court declines to find such a waiver. The Court next finds that Gill has not procedurally defaulted this claim, which is based on new law not reasonably available to him at the time he was convicted. On the merits of Gill's Motion, the Court first concludes that the VICAR murders underlying Gill's § 924(j) convictions are predicated on violations of Maryland law. Second, applying the categorical approach, the Court concludes that a violation of Maryland's murder law is not categorically a "crime of violence" because, by including felony murder, it includes conduct that does not require more than recklessness and thus sweeps more broadly than the definition of "crime of violence" under § 924(c)'s elements clause. Therefore, Gill's § 924(j) convictions—all requiring a violation of § 924(c)—are invalid. Finally, the Court determines that the appropriate remedy is to correct Gill's sentence without conducting a resentencing.

### A.   *Waiver*

The Government argues that Gill implicitly waived the right to bring this *Davis*-based challenge by virtue of his unconditional guilty plea. (Resp. Opp'n Mot. Vacate at 11 (citing *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973)).) "When a defendant pleads guilty, he waives all non[-]jurisdictional defects in the proceedings conducted prior to entry of the plea" and "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea, or the government's power to bring any indictment at all[.]" *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010), *as amended* (Feb. 9, 2010) (quotation marks and citations omitted).[3]

---

[3] Gill's first two arguments against waiver are based on the explicit waiver language of the plea agreement and are not responsive to the government's theory, which does not rely on the language in the plea agreement. The Government does not dispute Gill's first argument, that the plea agreement only expressly waived his *direct* appeal rights, or his

The parties point to conflicting precedent from the Courts of Appeals for the Seventh and Eleventh Circuits about whether this type of *Davis* claim regarding "crime of violence" under § 924(c) is barred by a guilty plea. The Court will first discuss these cases, along with recent Supreme Court precedent regarding the types of claims implicitly waived by a guilty plea. It will then look to cases from the Fourth Circuit and other district courts in this Circuit relating to *Johnson* and *Davis* claims. Finally, it will consider the Fourth Circuit's approach to similar claims in the context of express waivers in plea agreements. Taken together, these considerations raise too many concerns and expose too many flaws to permit the Court to find that Gill's claim is waived by his guilty plea. *See United States v. Bank*, 965 F.3d 287, 293 (4th Cir. 2020) ("Courts should 'indulge every reasonable presumption against waiver of fundamental constitutional rights[.]'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))); *United States v. Boyd*, 5 F.4th 550 (4th Cir. 2021) ("Courts have been disinclined lightly to presume that valuable rights have been conceded in the absence of clear evidence to the contrary." (brackets omitted) (quoting *United States v. Stout*, 415 F.2d 1190, 1192–93 (4th Cir. 1969))). The plea and sentencing setting is serious and highly consequential. Rulings that block a petitioner on procedural grounds must be well-grounded in the facts and circumstances of the particular guilty plea; such a ruling here would not meet that standard.

### i. Class v. United States *and Persuasive Authority*

The Supreme Court most recently spoke to the effect of a guilty plea to bar subsequent challenges to a conviction in *Class v. United States*, 138 S. Ct. 798 (2018). In *Class*, the defendant pled guilty to possession of a firearm on U.S. Capitol Grounds and subsequently brought an appeal challenging the statute of conviction as violating the Second Amendment and the Due Process

second argument, that it expressly waived his right to challenge his *sentence*, but not his *conviction*. (*See* Reply Supp. Mot. Vacate, ECF No. 258, at 17–18.)

Clause. *Id.* at 802. The Supreme Court held that "a guilty plea by itself [does not] bar[ ] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." *Id.* at 803. The Supreme Court acknowledged that under *Tollett*, "a guilty plea bars appeal of many claims, including some antecedent constitutional violations related to events . . . that had occurred prior to the entry of the guilty plea." *Id.* at 803 (quotations omitted). However, the Supreme Court reaffirmed the doctrine developed in *Menna v. New York*, 423 U.S. 61 (1975) and *Blackledge v. Perry*, 417 U.S. 21 (1974), that "a guilty plea does not bar a claim on appeal where on the face of the record the court had no power to enter the conviction or impose the sentence." *Id.* at 804 (quotations omitted). The Supreme Court explained that Class's claims were not barred by his guilty plea because they neither "contradict[ed] the 'admissions necessarily made upon entry of a voluntary plea of guilty'" nor "focus[ed] upon case-related constitutional defects that 'occurred prior to the entry of the guilty plea[,]'" but rather "call[ed] into question the Government's power to 'constitutionally prosecute' him." *Id.* at 804–05 (quoting *United States v. Broce*, 488 U.S. 563, 573–74, 575 (1989) and *Blackledge*, 417 U.S. at 30).

In support of its waiver argument, the Government relies on a case from the Seventh Circuit that distinguished *Class* and held that the petitioner's guilty plea had implicitly waived a similar claim to the one Gill brings here, that the predicate offense of murder-for-hire did not qualify as a "crime of violence" under § 924(c)'s elements clause. *Grzegorczyk v. United States*, 997 F.3d 743, 746 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 2580 (2022). The Seventh Circuit maintained that "an unconditional guilty plea waives any contention that an indictment fails to state an offense," a challenge that the court noted must be raised in a pretrial motion under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). *Id.* at 746–47 (quoting *United States v. Wheeler*, 857 F.3d 742, 745 (7th Cir. 2017)). The Seventh Circuit rejected petitioner's argument based on *Class*,

9

reasoning that "unlike in *Class*, Grzegorczyk's claim *does* contradict the terms of his plea agreement" as "he specifically admitted that he 'knowingly possessed a firearm . . . in furtherance of a crime of violence'—murder-for-hire—in violation of § 924(c)(1)(A)." *Id.* at 747 (emphasis in original). Moreover, the court reasoned that because the Supreme Court in *Davis* left § 924(c)'s elements clause intact, the conviction "remains constitutionally permissible as long as murder-for-hire falls within the definition of a crime of violence under the elements clause." *Id.* The claim that the predicate crime is not a "crime of violence" under the elements clause, the court emphasized, "is an issue of statutory construction, not a claim of constitutional immunity from prosecution." *Id.* at 748. Thus, the court held that *Class* was not controlling and reiterated that "an unconditional guilty plea implicitly waives such challenges." *Id.*

Gill counters with a case from the Eleventh Circuit holding that the petitioner's guilty plea did not implicitly waive his claim that the predicate offenses of Hobbs Act robbery and attempted robbery could not satisfy § 924(c)'s elements clause. *United States v. St. Hubert*, 909 F.3d 335, 344 (11th Cir. 2018), *abrogated on other grounds by United States v. Taylor*, 142 S. Ct. 2015 (2022). The Eleventh Circuit explained that this "statutory claim" regarding the elements clause, while distinct from the constitutional challenge to the residual clause, nonetheless asserted a jurisdictional defect under that circuit's precedent because it amounted to a claim that "the indictment failed to charge an offense against the laws of the United States[.]" *Id.* at 340, 343–44. In other words, the claim asserted that the alleged conduct was "as a matter of law, outside the sweep of the charging statute" and that "the Government's proof of that conduct, no matter how overwhelming, would have brought it no closer to showing the crime charged than would have no proof at all." *Id.* at 343 (alterations omitted) (quoting *United States v. Peter*, 310 F.3d 709, 714–15 (11th Cir. 2002)).

10

The Eleventh Circuit relied in part on dicta from *Class* surveying "an understanding of the nature of guilty pleas which, in broad outline, stretches back nearly 150 years." *Class*, 138 S. Ct. at 804. The Supreme Court cited an early case stating that a guilty plea is "a confession of all the facts charged" as well as "the evil intent imputed to the defendant" that waives "all merely technical and formal objections of which the defendant could have availed himself by any other plea or motion"; however, "*if the facts alleged and admitted do not constitute a crime* against the laws of the Commonwealth, the defendant is entitled to be discharged." *Id.* (emphasis added) (quoting *Commonwealth v. Hinds*, 101 Mass. 209, 210 (1869)). The Eleventh Circuit, while acknowledging that "the Supreme Court in *Class* did not speak in terms of jurisdiction or jurisdictional indictment defects," noted that this conception of a guilty plea further supported its analysis against finding a waiver. *St. Hubert*, 909 F.3d at 343–44.

### ii.  **Johnson** *and* **Davis** *Jurisprudence in Fourth Circuit*

The parties have not pointed to any authority from this Circuit, and the Court is not aware of any, that squarely addresses this waiver argument. However, given the reasoning in *Class* and related cases from the Fourth Circuit and other district courts in this Circuit, as discussed in more detail below, the Court has reservations about adopting the Government's waiver analysis. Thus, absent any binding authority, it declines to follow *Grzegorczyk*'s holding that Gill's claim presents an issue of statutory interpretation that is waived by his guilty plea.[4]

First, the Court cannot ignore the interconnectedness of the statutory interpretation component of Gill's argument with the constitutional issue recognized in *Davis*. *Davis* held that the definition of "crime of violence" in § 924(c) was, in part, unconstitutionally vague. The effect

---

[4] The Government also points to the Supreme Court's explanation for its denial of certiorari, signed by a majority of the justices. (Resp. Opp'n Mot. Vacate at 12 (citing *Grzegorczyk v. United States*, 142 S. Ct. 2580 (June 30, 2022)).) A denial of certiorari does not have precedential value, *see Teague v. Lane*, 489 U.S. 288, 296 (1989), and the Court does not find the denial's analysis of the waiver issue sufficient to be persuasive.

of such a holding is that at least some people could have been convicted under § 924(c)—and by

extension § 924(j)—for conduct that is beyond the scope of what the Government can

constitutionally prosecute. As the Fourth Circuit stated:

> Before *Davis*, someone who had committed a "crime of violence" that satisfied the
> definition in the residual clause, but not the definition in the force clause, was
> subject to prosecution under § 924(c). But after *Davis*, that same person cannot
> face a § 924(c) charge. So *Davis* placed that individual and others like him *beyond
> the government's power to prosecute*.

*Thomas*, 988 F.3d at 789 (emphasis added).

Significantly, although the Government seemingly did not raise a waiver issue in *Thomas*,

the Fourth Circuit authorized the petitioner, who had pled guilty to a § 924(c) violation, to file a

second or successive § 2255 motion after concluding that he had stated a "plausible claim for

relief" that his predicate offense of VICAR assault with a dangerous weapon did not satisfy

§ 924(c)'s elements clause. *Id.* at 786–88, 791. And several district court rulings in this Circuit

have rejected the argument that a guilty plea waived a post-*Davis* challenge that the predicate

offense did not constitute a "crime of violence" under § 924(c)'s elements clause because, under

*Class*, a "guilty plea itself does not foreclose [a] challenge to the constitutionality of the statute

under which he was convicted." *United States v. Reed*, Crim. No. 3:09-418-3-HEH, 2019 WL

4655898, at *4 (E.D. Va. Sept. 24, 2019); *see also, e.g.*, *United States v. Samuels*, Crim. No. 3:07-

263, 2019 WL 4675367 (E.D. Va. Sept. 25, 2019) (same). Granted, these cases did not grapple

with the distinction the Government raises here between "constitutional challenges to the

government's power to criminalize certain conduct, and a petitioner's ability to raise statutory

interpretations after a guilty plea to the charge to which they previously pled." (Resp. Opp'n Mot.

Vacate at 12 (citing *Grzegorczyk*, 997 F.3d at 747–48).) Nevertheless, they reflect an

understanding that these § 924(c) challenges are based at least in part on the constitutional defect recognized in *Davis*.

As a practical matter, unless the record makes clear whether an individual was convicted under the elements clause or the residual clause of § 924(c), that individual could not vindicate their *Davis*-based constitutional challenge to conviction without reaching the statutory interpretation issue of whether their "crime of violence" satisfied the elements clause. The Fourth Circuit has recognized a similar concern in the context of collateral attacks on sentences imposed pursuant to the ACCA enhancement (which, as noted above, includes a nearly identical residual clause to that of § 924(c)). It has held that a "claim for post-conviction relief 'relied on,' at least in part, the new rule of constitutional law announced in *Johnson*" for purposes of filing a second or successive § 2255 petition where "[a]lthough the record d[id] not establish that the residual clause served as the basis for concluding that [the petitioner's] prior convictions . . . qualified as violent felonies," the sentence "*may* have been predicated on application of the now-void residual clause[.]" *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017) (emphasis added). This is because courts "will not penalize a movant for a court's discretionary choice not to specify under which clause of [the ACCA] an offense qualified as a violent felony." *Id.* Similarly here, applying a waiver would penalize defendants, like Gill, whose convictions may have relied on the residual clause.

Another case from this District, in which the defendant pled guilty to a § 924(c) count but moved to dismiss the count in light of *Johnson* before sentencing, is also instructive. *See United States v. Edmundson*, Crim. No. PWG-13-15, 2016 WL 3597574, at *1 (D. Md. July 5, 2016). The court determined that the residual clause of § 924(c) was unconstitutionally vague (as the Supreme Court later held in *Davis*) and that defendant's predicate crime did not satisfy the

13

elements clause. *Id.* at *1–*2. It subsequently held that the defendant did not breach the plea agreement by moving to dismiss for two reasons. *Id.* at *5. First, the defendant could "challenge jurisdictional defects (such as by alleging, as [she did], that the Court lacks jurisdiction over the conduct described in [the § 924(c) count] because it does not constitute a federal crime), notwithstanding any waiver provisions in the Plea Agreement." *Id.* at *5; *see also United States v. Parker*, 36 F. Supp. 3d 550, 556 (W.D.N.C. 2014) (dismissing indictment for lack of subject matter jurisdiction where "the alleged defect is not merely a missing element or fact, but is an allegation of conduct that, as a matter of law, would be beyond the purview of the statutes charged"). Second, the defendant in *Edmundson* did not breach the plea agreement because she did not waive her right "to challenge the Court's ability to sentence her on a charge that 'judged on its face ...is one [that] the State may not constitutionally prosecute.'" 2016 WL 3597574 at *5 (quoting *Menna*, 423 U.S. at 62 n.2).

In accordance with prior opinions in this Circuit, the Court finds that, whether or not it is strictly a jurisdictional issue, the claim Gill brings here is not implicitly waived by a guilty plea.

### iii. Scope of Express Waivers

Further, the Government's argument would produce inconsistent results with how the Fourth Circuit has defined the scope of *express* waivers in plea agreements. In a case Gill cites, the Fourth Circuit held that a claim much like the one Gill brings was outside the scope of an express waiver of the right to collaterally attack a conviction because it amounted to a showing of "actual innocence" and therefore would result in a miscarriage of justice if waived. *United States v. Adams*, 814 F.3d 178, 182–83 (4th Cir. 2016) (refusing to enforce otherwise valid express waiver where defendant argued his predicate offense no longer qualified as a felony when he had to have been convicted of a felony to be liable under 18 U.S.C. § 922(g)). In an unpublished opinion, the

14

court applied this reasoning to a claim attacking a conviction under § 924(c). *United States v. Sweeney*, 833 F. App'x 395, 396–97 (4th Cir. 2021) (refusing to apply express appellate waiver to post-*Davis* claim that predicate offenses of conspiracy to commit and attempted Hobbs Act robbery did not qualify as "crime[s] of violence" under § 924(c)'s elements clause).

Similarly, Gill cites a case in which the Fourth Circuit held that an express waiver in a plea agreement does not bar a similar challenge based on *Johnson* to a sentencing enhancement under the ACCA. *See United States v. Cornette*, 932 F.3d 204, 210 (4th Cir. 2019). The court assumed, for purposes of appeal, that Cornette had been sentenced pursuant to the residual clause because the record was not clear, and therefore must be read in Cornette's favor. *Id.* at 208 (citing *Winston*, 850 F.3d at 682). Because *Johnson* "str[uck] the statutory provision under which a defendant was sentenced as unconstitutional, thus removing the district court's statutory authorization to sentence altogether," and because *Johnson* was held to apply retroactively, "mak[ing] clear that sentences imposed under the residual clause of the ACCA are impermissible because every person in the 'class of persons' sentenced under the residual clause is one 'convicted of conduct the law does not make criminal[,]'" the waiver did not bar Cornette's claim. *Id.* at 210.

To hold that Gill's claim is forfeited by his guilty plea itself, when the Fourth Circuit has refused to enforce an express waiver against the same claim in *Sweeney* and an analogous claim in *Cornette*, would produce inconsistent results and counsels against adopting the Government's waiver argument here. These considerations cast significant doubt on the applicability of a waiver in these circumstances in this Circuit. Accordingly, the Court declines to find that Gill waived the right to bring this challenge to the § 924(j) Counts by unconditionally pleading guilty.

### B.  Procedural Default

Similarly, Gill has not procedurally defaulted on his *Davis* claim.  The failure to raise a claim on direct appeal constitutes a procedural default barring its presentation in a § 2255 petition, unless the petitioner can demonstrate either cause and prejudice, or actual innocence. *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010).  When a petitioner, by signing a plea agreement, waives his right to pursue a direct appeal, "he is precluded from raising [on collateral review] claims that are the sort that *could have* been raised on appeal." *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) (emphasis in original) (quotation omitted).

"[A] claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default[.]" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).  Specifically, a claim is deemed "not reasonably available to counsel" when a Supreme Court decision "explicitly overrule[s] one of [its] precedents"; "overturn[s] a longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved"; or "disapprove[s] a practice [the Supreme Court] arguably has sanctioned in prior cases." *Reed*, 468 U.S. at 17 (brackets omitted) (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)).

In 2008, when this Court entered judgment against Gill, the Supreme Court had rejected a vagueness challenge to the ACCA's residual clause, a precedent which was explicitly overruled by *Johnson* in 2015. *See Johnson*, 576 U.S. at 594, 606 (noting that "[i]n both *James [v. United States*, 550 U.S. 192 (2007)] and *Sykes [v. United States*, 564 U.S. 1 (2011)], the Court rejected suggestions by dissenting Justices that the residual clause violates the Constitution's prohibition of vague criminal laws" and declaring these cases overruled). *Davis* relied largely on *Johnson*,

noting that "[f]or years, almost everyone understood § 924(c)(3)(B) to require exactly the same . . . approach that this Court found problematic in the residual clause[ ] of the ACCA[.]" *Davis*, 139 S. Ct. at 2326. Thus, Gill's claim was "not reasonably available to" him before the Supreme Court decided *Johnson*, and he has therefore shown cause for not bringing the claim on direct appeal. *See United States v. Roach*, Crim. No. 3:09-418-1-HEH, 2019 WL 4655897, at \*6 (E.D. Va. Sept. 24, 2019) (holding petitioner had not procedurally defaulted claim that predicate offense did not qualify as "crime of violence" because "the decision in *Johnson* disapproved 'a practice the Supreme Court arguably has sanctioned in prior cases'" (brackets omitted) (quoting *Reed*, 468 U.S. at 17)); *Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022) ("Jones has established cause for failing to raise the *Davis* issue on direct review, because the state of the law at the time of his appeal did not offer a reasonable basis upon which to challenge the guilty plea." (citing *Reed*, 468 U.S. at 17)); *see also Jackson*, 32 F.4th at 283 & n.3 (rejecting argument that procedural default barred the petitioner's claim that his predicate offense did not qualify as a "crime of violence" under § 924(c) because the court had already "held that *Davis* established a new rule of constitutional law made retroactive on collateral review").

Gill has also shown actual prejudice. As explained below, his three § 924(j) convictions are not based on a valid predicate offense. *See Jones*, 39 F.4th at 526 (the fact that predicate offenses did not qualify as "crime[s] of violence" under § 924(c)'s elements clause "established prejudice, in that the error 'worked to his actual and substantial disadvantage'" (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))). Accordingly, the Court will consider Gill's Motion on its merits.

### C. "Crime of Violence"

The Court now turns to the merits of Gill's § 2255 Motion and will determine whether his predicate offenses—here, VICAR murders—constitute "crime[s] of violence." In the case of a violation of § 924(c) predicated on a VICAR offense, courts look at the federal or state offense underlying VICAR to determine whether it categorically qualifies as a "crime of violence" under § 924(c). *See, e.g., United States v. (Daniel Lamont) Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019). First, the parties dispute whether the VICAR murders here are predicated on a violation of the Maryland murder statute, as Gill argues, (Mot. Vacate at 2–3; Reply Supp. Mot. Vacate, ECF No. 258, at 6–8), or of 18 U.S.C. § 1111, as the Government argues. (Resp. Opp'n Mot. Vacate at 13–15.) The Court concludes that Gill is correct that the VICAR murders are predicated on murder in violation of Maryland law. Second, the Court concludes that murder under Maryland law is not categorically a "crime of violence" under § 924(c).

### i. Predicate Offense

While the charges on the § 924(j) Counts identify "murder in aid of racketeering" as the predicate "crime[s] of violence," they do not specify a state or federal murder statute underlying the VICAR offenses. (Crim. Information at 4–6.) Gill argues that the VICAR murders underlying his § 924(j) convictions are predicated on violations of Maryland murder law, as identified in the "Methods and Means of the Latrobe Organization" portion of the Information:

> At all times relevant to this Criminal Information, the Latrobe Organization, an enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving the distribution of controlled substances in violation of Title 21, United States Code, Sections 841 and 846; and *acts involving murder in violation of Maryland Code*, Criminal Law, Section 2-201, 2-204, 2-205, 2-206.[5]

---

[5] Maryland Code, Criminal Law § 2-201 proscribes first-degree murder. Section 2-204 covers second-degree murder. Sections 2-205 and 2-206 refer to attempted first-degree and second-degree murder, respectively.

(*Id.* at 3 (emphasis added).)

The Government counters that, "[i]n assessing whether a predicate VICAR offense constitutes a 'crime of violence,' several courts within this Circuit have analyzed the generic, federal definition of the crime at issue, rather than the underlying state predicate offense(s)." (Resp. Opp'n Mot. Vacate at 13–14 (citing *United States v. Jones*, Crim. No. 7:16-30026, 2017 WL 3725632, at *5 (W.D. Va. Aug. 29, 2017) and *Cousins*, 198 F. Supp. at 626).) It further avers that "this approach is consistent with the language of § 924(c), which requires the predicate offense to be evaluated under federal law." (*Id.* at 14.) Therefore, according to the Government, "the underlying federal crime for [Gill's] VICAR murder offense is federal premediated first-degree murder, in violation of 18 U.S.C. § 1111." (*Id.*)

The Fourth Circuit recently rejected an assertion, like the Government's here, that the court "should not consider the elements of the state statute [underlying VICAR assault] to determine whether the VICAR assault offense is a crime of violence" under § 924(c). *Manley*, 52 F.4th at 148. The court explained that this argument "overlooks element (4) of VICAR assault, which requires that the assault be 'in violation of the laws of any State or the United States.'" *Id.* (quoting 18 U.S.C. 1959(a)). Thus, the court analyzed whether the petitioner's convictions under § 924(c) (predicated on VICAR assault) and § 924(j) (predicated on VICAR murder) were supported by valid "crime[s] of violence" based on how the relevant assault and murder offenses are defined under Virginia law. *Id.* at 147–51. In contrast, in *United States v. Jackson,* the court upheld, on collateral review, a § 924(c) conviction predicated on 18 U.S.C. § 1111. 32 F.4th at 284. There, however, the murder took place in a national forest and the indictment specifically stated that the defendant used a firearm "during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: Murder (Title 18 United States Code, Section

19

1111(a))[.]" *United States v. Jackson*, 327 F.3d 273, 287 (4th Cir. 2003) (affirming conviction on direct appeal).

Unlike in *Jackson* and *Manley*, here the Information does not specifically identify the state or federal offense(s) on which the VICAR murders are predicated. *See id.*; *Manley*, 52 F.4th at 147, 149. However, a review of the record suggests that Gill's VICAR charges were predicated on Maryland law. The Information alleges that members of the Latrobe organization committed murders in violation of Maryland law as "racketeering activity," (Crim. Information at 3), and nowhere alleges that Gill or members of the organization violated 18 U.S.C. § 1111.[6] Moreover, as Gill points out, there are no facts in the Information alleging that the murders could have been charged under § 1111—i.e., that the murders were committed "[w]ithin the special maritime and territorial jurisdiction of the United States[.]" *See* 18 U.S.C. § 1111(b); (Reply. Supp. Mot. Vacate at 8). The factual stipulation provided that the killing of Stewart Staggs occurred "in the 900 block of Webb Court, right outside of Latrobe Homes." (Plea Agreement at 5; *see also id.* at 4 (stating that the Latrobe Organization "originated in the Latrobe Homes area of East Baltimore" and operated in "Baltimore area neighborhoods").) The factual stipulation does not specify the location of the killings of Valencia Jones and Ramon Santana. (*See id.* at 4.) Therefore, the facts contained in the plea agreement, as signed by the parties, could not support a finding of guilt under § 1111.[7] *See United States v. Weaver*, Crim. No. 09-00222, 2010 WL 1633319, at *2 (S.D. W. Va. Apr. 20, 2010) (for VICAR offense, "the elements of the predicate [substantive violent crime]

---

[6] Although the Government does not press this point, the Court notes that the reference to § 1111 in the "Charge" for the § 924(j) Counts refers only to the definition of murder, as incorporated into § 924(j)(1). *See Young*, 248 F.3d at 274–75 ("Section 924(j)(1) . . . incorporates only the *definition* of murder contained in section 1111." (emphasis in original)). Therefore, the reference to § 1111 in the Information does not identify the predicate "crime of violence" under § 924(c).

[7] The Court further notes that, while the Second Superseding Indictment charged Gill with three counts of Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(1), he was never charged with a violation of 18 U.S.C. § 1111. (*See* ECF Nos. 1, 41, 91.)

need not be specifically alleged in the indictment, *notwithstanding that they must be proved at trial*" (emphasis added)); *United States v. Simmons*, 11 F.4th 239, 271–74 (4th Cir. 2021) (looking to Virginia law to determine whether evidence was sufficient to show that defendants committed "the substantive attempted murder offense" underlying VICAR murder convictions where the indictment "only allege[d] that the attempted murders violated Virginia law"), *cert. denied sub nom. Lassiter v. United States*, 142 S. Ct. 574 (2021).

Accordingly, the Court concludes that Gill's § 924(j) convictions based on "murder in aid of racketeering" were ultimately predicated on murder as defined by Maryland law.

### ii. *Application of the Categorical Approach*

Having concluded that Gill's convictions were predicated on violations of Maryland's murder statute, the Court next determines that this offense does not categorically qualify as a "crime of violence" under § 924(c), and therefore cannot support Gill's § 924(j) convictions.

As stated previously, following the Supreme Court's decision in *Davis* invalidating the "residual clause" of § 924(c) and the Fourth Circuit's decision in *Thomas* applying this decision retroactively, a predicate offense must qualify as a "crime of violence" under the elements clause. This clause defines "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A).

In *Borden*, the Supreme Court interpreted similar language in the ACCA defining "violent felony." 141 S. Ct. at 1822 (citing 18 U.S.C. § 924(e)(2)(B)(i)). It reasoned that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual" and therefore held that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA." *Id.* at 1825, 1834. The Fourth Circuit has applied

this holding to the elements clause of § 924(c), meaning "an offense will not have as an element the 'use' of force sufficient to qualify as a crime of violence if it does not have the requisite level of mens rea" of more than recklessness. *Roof*, 10 F.4th at 399 (brackets omitted) (quoting *United States v. Allred*, 942 F.3d 641, 652 (4th Cir. 2019)).

"To determine whether a felony meets this definition and thus constitutes a 'crime of violence,' [courts] generally use the categorical approach." *Jackson*, 32 F.4th at 284.   The categorical approach involves "look[ing] to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force." *Id.* (quoting *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc)).   Under this approach, courts "consider only the elements of the crime as defined in the statute, not the facts particular to the case at hand" and "ask whether the 'most innocent conduct' criminalized by the statute meets the definition of a 'crime of violence.'" *Id.* (quoting *Roof*, 10 F.4th at 398).   If the answer is no, "that predicate offense is not "categorically" a crime of violence under the elements clause.'" *Roof*, 10 F.4th at 398 (brackets omitted) (quoting *Simms*, 914 F.3d at 233).

In a "narrow range of cases" courts apply a "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 261 (2013).   This modified approach applies when the statute defining the predicate offense is "'divisible'—*i.e.*, comprises multiple, alternative versions of the crime" or, in other words, "lists multiple, alternative elements, and so effectively creates 'several different crimes.'" *Id.* at 262, 264 (ellipses omitted) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)).   This approach allows the court to look at limited record documents, including the charging document and plea agreement, *Shepard v. United States*, 544 U.S. 13, 20–21 (2005), to "determine which crime formed the basis of the defendant's conviction." *Descamps*, 570 U.S. at

263. Thus, the modified categorical approach "acts ... as a tool" that "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.*

However, not all alternatively phrased statutes are divisible. *See (Richard) Mathis v. United States*, 579 U.S. 500, 517 (2016). Whereas "[d]ivisible statutes set forth 'multiple, alternative versions of the crime' with distinct elements, ... indivisible statutes merely set out different means of completing the crime." *Jackson*, 32 F.4th at 284 (quoting *Descamps*, 570 U.S. at 262). The key difference is that an indivisible statute "spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular [one]." *Mathis*, 579 U.S. at 506.

This "threshold inquiry" of whether an alternatively phrased state statute is divisible is "easy" when "a state court decision definitively answers the question," in which case a federal court "need only follow what it says." *Id.* at 517–18; *see also Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion) ("If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.").

Maryland courts have consistently held that the Maryland first-degree murder statute is a single, indivisible crime.[8] *See Ross v. State*, 519 A.2d 735, 737 (Md. 1987) ("[A] conviction of

---

[8] "The [Maryland murder] statute does not create any new statutory crimes, but instead divides the crime of murder, as known at common law, into degrees, first and second-degree." *State v. Jones*, 155 A.3d 492, 502 (Md. 2017). Maryland Code, Criminal Law § 2-201 provides: "(a) A murder is in the first degree if it is: (1) a deliberate, premeditated, and willful killing; (2) committed by lying in wait; (3) committed by poison; or (4) committed in the perpetration of or an attempt to perpetrate: (i) arson in the first degree; (ii) burning a barn, stable, tobacco house, warehouse, or other outbuilding that: 1. is not parcel to a dwelling; and 2. contains cattle, goods, wares, merchandise, horses, grain, hay, or tobacco; (iii) burglary in the first, second, or third degree; (iv) carjacking or armed carjacking; (v) escape in the first degree from a State correctional facility or a local correctional facility; (vi) kidnapping under § 3-502 or § 3-503(a)(2) of this article; (vii) mayhem; (viii) rape; (ix) robbery under § 3-402 or § 3-403 of this article; (x) sexual offense in the first or second degree; (xi) sodomy as that crime existed before October 1, 2020; or (xii) a violation of § 4-503 of this article concerning destructive devices."

23

first degree murder may be proved *either* by showing deliberation, wilfulness and premeditation (premeditated murder), or by showing a homicide committed in the perpetration, or attempted perpetration, of one of the enumerated felonies (felony murder). There is but one offense—murder in the first degree—but that offense may be committed in more than one way."); *Sobotker v. State*, 2017 WL 383482, at *2–*3 (Md. Ct. Spec. App. Jan. 27, 2017) (noting that "the Legislature intended first-degree murder to be treated as one crime, and to be punished as one crime, regardless of modality" and rejecting argument that "allowing the jury to convict appellant of first degree murder without agreeing on whether he was guilty of premeditated murder or felony murder" violated the defendant's right to a unanimous verdict). More recently, the Court of Special Appeals of Maryland (now known as the Appellate Court of Maryland) compared the Maryland murder statute to the Arizona law in *Schad*, observing that Arizona, "like Maryland, treated murder as a unitary crime divided into two degrees and regarded as alternative *mentes reae* for first-degree murder a premeditated homicide and a killing committed in the course of certain enumerated felonies." *Kouadio v. State*, 179 A.3d 323, 327 (Md. Ct. Spec. App. 2018) (citing *Schad*, 501 U.S. at 627 (holding "a first-degree murder conviction under jury instructions that did not require agreement on whether the defendant was guilty of premeditated murder or felony murder" did not violate due process)).[9]

So too for second-degree murder, which is defined as "[a] murder that is not in the first degree under § 2-201[.]". Md. Code Ann., Crim. Law § 2-204. Maryland courts have "distinguished four different types of second-degree murder": (1) "killing another person (other

---

[9] The Government points to various other "indicia of divisibility" to argue that the statute is divisible. (*See* Resp. Opp'n Mot. Vacate at 16–20). But this conclusion would "run[ ] afoul of the fundamental principle that we are not free to substitute our own interpretations of state statutes for those of a State's courts." *Schad*, 501 U.S. at 636. Notably, the Government does not contest the Maryland state court cases cited by Gill that speak directly to the united nature of the murder statute, and the Maryland court cases the Government cites do not squarely address this issue. (*See* Resp. Opp'n Mot. Vacate at 17 (citing *State v. Allen*, 875 A.2d 724 (Md. 2005); *Evans v. State*, 349 A.2d 300 (Md. Ct. Spec. App. 1975), *aff'd*, 362 A.2d 629 (1976); *Newton v. State*, 373 A.2d 262 (Md. 1977)).)

than by poison or lying in wait) with the intent to kill, but without the deliberation and premeditation required for first degree murder"; (2) "killing another person with the intent to inflict such serious bodily harm that death would be the likely result"; (3) "depraved heart murder"; and (4) "murder committed in the perpetration of a felony other than those enumerated in the first-degree murder statutes." *Thornton v. State*, 919 A.2d 678, 688 & n.6 (Md. 2007) (quotations omitted). As with first-degree murder, these types "are not four separate crimes" and "do not have to yield distinct verdicts[,]" but rather represent "alternative mental states for committing the same crime." *Wallace v. State*, 186 A.3d 156, 168 (Md. Ct. Spec. App. 2018).

An indivisible offense that includes felony murder—like the Maryland first- and second-degree statutes at issue here—is not categorically a "crime of violence" under § 924(c) because felony murder, "the most innocent conduct criminalized by" Maryland's murder statutes, "requires only the mens rea necessary to attempt or complete the underlying felony (i.e., arson, escape, etc.)." *Jackson*, 32 F.4th at 285; *see also Bruce v. State*, 566 A.2d 103, 104 (Md. 1989) ("To secure a conviction for first degree murder under the felony murder doctrine, the State is required to prove a specific intent to commit the underlying felony and that death occurred in the perpetration or attempt to perpetrate the felony[.]"). Under Maryland law, "a felony murder committed in the course of certain enumerated felonies . . . is murder in the first degree, notwithstanding the fact that the killing may have been reckless or merely accidental." *Brooks v. State*, 655 A.2d 1311, 1317 (Md. Ct. Spec. App. 1995), *abrogated on other grounds by Winters v. State*, 76 A.3d 986 (Md. 2013). "That mens rea is not more than recklessness and thus, does not satisfy *Borden*." *Jackson*, 32 F. 4th at 285; *see also Roof*, 10 F.4th at 399–400 ("[E]ven if the statute governing the predicate offense requires that the proscribed conduct result in death, it must also indicate a higher

25

degree of intent than reckless, negligent, or merely accidental conduct in order to satisfy the elements clause.").

In one recent case, for example, the Court of Appeals of Maryland (now known as the Supreme Court of Maryland) upheld a felony murder conviction for a killing that occurred during the escape from a felonious burglary when the defendant ran over a police officer with his car. *Harris v. State*, 276 A.3d 1071, 1075, 1087 (Md. 2022). The sixteen-year-old defendant had testified that he saw the police officer approach the car with her gun drawn and that because he was scared, he "put his head down, closed his eyes," and "didn't even know [he] hit [the officer]." *Id.* at 1076–77. The defendant's mental state in hitting the officer was ultimately irrelevant to the jury's conviction for felony murder. *See id.* at 1078 n.2 (quoting jury instructions). Noting that "even an accidental killing of a person during the commission of a felony is elevated to the level of murder," *id.* at 1082, the court reiterated that "the intent that Petitioner had to commit felony burglary, was transferred to the intent necessary to find him guilty of the felony murder of [the police officer.]" *Id.* at 1087.

Indeed, felony murder in Maryland can stand where no force was used. In one "textbook example" of felony murder based on "a killing that was truly accidental[,]" *Brooks*, 655 A.2d at 1322 (citing *Stewart v. State*, 500 A.2d 676 (Md. Ct. Spec. App. 1985)), the defendant entered a hotel lobby and handed the desk clerk a bag with a note directing her to put money in the bag. *Stewart*, 500 A.2d at 677. The hotel clerk died approximately two hours later of cardiac arrest. *Id.* The Maryland Court of Special Appeals upheld the felony murder conviction because "the evidence was sufficient to support the jury's finding that fright or shock of the robbery committed by the appellant had caused [the victim's] adrenaline induced heart failure." *Id.* at 683.

The Government tries to avoid this conclusion by citing an unpublished Fourth Circuit case that the Court does not find persuasive here.  There, the court "conclude[d] that the predicate offense of Maryland first-degree murder is categorically a crime of violence" under § 924(c) and § 924(j).  *United States v. Landaverde-Giron*, No. 18-4598, 2022 WL 101941, at *3 (4th Cir. Jan. 11, 2022).  The Fourth Circuit relied on (*Daniel Lamont*) *Mathis*, in which it had "held Virginia's first-degree murder statute categorically qualifies as a crime of violence." *Id.* (citing *Mathis*, 932 F.3d at 265).  However, *Mathis* was decided before *Borden* and *Jackson*, and neither *Landaverde-Giron* nor *Mathis* discuss whether the respective state laws were divisible or whether the inclusion of felony murder as an alternative means of commission would disqualify the offense as a "crime of violence." *See Jackson*, 32 F.4th at 283 (reviewing district court decision that relied on *Mathis* "to hold that 'the offense of murder in the first degree is unquestionably a crime of violence under the force clause'" and noting that "[c]ritically, the district court denied § 2255 relief prior to the Supreme Court's decision in *Borden*").[10]

Regarding second-degree felony murder, the Government points to depraved heart murder, which requires "extreme indifference to the value of human life," as a sufficiently culpable mens rea to qualify as a "crime of violence" following *Borden*.[11]  However, when faced with an

---

[10] Beyond this point, the Government does not directly challenge the premise that, if indivisible, the first-degree murder statute encompassing felony murder cannot qualify as a "crime of violence" under § 924(c), but merely notes that "[t]o the extent *Borden* has altered the framework set forth in [*Landaverde-Giron*], this Court should still find that Maryland first-degree murder categorically qualifies as a force clause 'crime of violence' on the ground that it is a divisible offense." (Resp. Opp'n Mot. Vacate at 16.)  As previously stated, the Court must follow the state courts' word on the interpretation of the state statute. *See supra* note 9.

[11] After the parties completed briefing on Gill's § 2255 Motion, the Fourth Circuit held that the Virginia second-degree murder statute requiring at least extreme recklessness qualifies as a "crime of violence" under § 924(c) following *Borden. See Manley*, 52 F.4th at 150–51.  This case does not discuss whether the Virginia murder statute is divisible nor the implication of felony murder on its conclusion and did not cite *Jackson*, and therefore does not compel a different result than that which the Court reaches here.  To the extent the tension between *Jackson* and *Manley* creates an ambiguity in the law, in accordance with the rule of lenity the Court will not construe that ambiguity against Gill. *See Davis*, 139 S. Ct. at 2333 (the rule of lenity "teach[es] that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor").

indivisible statute under the categorical approach, the Court must look to the most innocent conduct captured by the statute—here, second degree felony murder—which does not require more than recklessness and thus, as discussed above, cannot qualify as a "crime of violence." The Government also points to the fact that that charge can only be based on the commission of a felony, not enumerated in the first-degree murder section, that is "inherently dangerous to [human] life." (Resp. Opp'n Mot. Vacate at 23 (citing *Roary v. State*, 867 A.2d 1095, 1106 (Md. 2005)).) However, the requirement that the "underlying felony must involve danger to life, which is determined by looking to the nature of the crime or 'the manner in which it was perpetrated in a given set of circumstances[,]'" *Yates v. State*, 33 A.3d 1071, 1078 (Md. Ct. Spec. App. 2011) (quoting *Fisher v. State*, 786 A.2d 706, 733 (2001)), does not satisfy *Borden*'s requirement that, to qualify as a "crime of violence," the statute must require a *use of force* that is more than reckless. *See Jackson*, 32 F.4th at 285.

A case upholding a second-degree felony murder conviction based on possession of marijuana with intent to distribute or conspiracy to distribute marijuana illustrates this point. *See Nicholson v. State*, 196 A.3d 480 (Md. Ct. Spec. App. 2018). In that case, the defendant admitted that he met two people in a parking lot to sell them marijuana and told police that the men attempted to rob him at gunpoint, describing a struggle that ensued during which "he 'grabbed' the assailant's gun" and might have "turn[ed] the gun on [the assailant] while [they were] tussling[,]" but his memory of when the shots went off was "blurry." *Id.* at 483–84. On appeal, the court reaffirmed that "self-defense is not a defense to felony murder." *Id.* at 489–90 (quoting *Sutton v. State*, 776 A.2d 47, 71 (Md. Ct. Spec. App. 2001)). In reaching this conclusion, the court clarified that this self-defense exception was *not* limited "to cases of felony murder where the underlying felony involves *force or the threat of force*," emphasizing instead that by engaging in "an inherently

28

dangerous felony[,]" the defendant "was responsible for creating [the dangerous] situation" he found himself in. *Id.* at 490–91 (emphasis added). Specifically, the court explained:

> In convicting Nicholson of second-degree felony murder, the jury necessarily found that Nicholson's felonious conduct was inherently dangerous, and Nicholson does not challenge that finding on appeal. Indeed, the jury could have reasonably inferred from the evidence that Nicholson arrived at the rendezvous armed and prepared to use violence as necessary to protect himself and his product. Furthermore, the dollar value of the marijuana being sold – $3,200 – suggested that the stakes were high and potentially dangerous.

*Id.* at 491. Thus, while the requirement that the underlying felony be "inherently dangerous to life" in some sense sounds in an "extreme recklessness" standard, it does not specifically attach to a use of force that is more than reckless, as required by *Borden*.

In summary, the VICAR murder charged here was predicated on an indivisible murder statute that covers conduct that does not require, as an element, the "use of force" with a mens rea of "more than recklessness[.]" *Jackson*, 32 F.4th at 285. The predicate offense underlying Gill's convictions therefore does not categorically qualify as a "crime of violence" under § 924(c) and cannot support convictions under § 924(j). Accordingly, Gill's convictions on the § 924(j) Counts will be vacated by separate order.

## V. *Remedy*

Finally, the Court concludes that a resentencing on Count One is not warranted, and the 480-month sentence on that Count will stand. "[Section] 2255 authorizes the district court to take one of four distinct courses in remedying a successful § 2255 petitioner's unlawful sentence: (1) 'discharge the prisoner,' (2) 'grant the prisoner a new trial,' (3) 'resentence the prisoner,' or (4) 'correct the prisoner's sentence.'" *United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007) (brackets omitted) (quoting 28 U.S.C. § 2255(b)). "In addition, the 'new' sentence may be the same as the original sentence." *United States v. Davis*, 708 F. App'x 767, 769 (4th Cir. 2017)

(quoting *Hadden*, 475 F.3d at 661 n.9). "The goal of § 2255 review is to place the defendant in exactly the same position he would have been had there been no error in the first instance." *United States v. Williams*, 740 F. App'x 794, 795 (4th Cir. 2018) (brackets omitted) (quoting *Hadden*, 475 F.3d at 665). The Fourth Circuit has recognized "that § 2255 gives the district courts 'broad and flexible power . . . to fashion an appropriate remedy[.]'" *Hadden*, 475 F.3d at 668 (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)).

In *Hadden*, the defendant had been convicted of two drug offenses in violation of 21 U.S.C. §§ 841(a)(1) and 846, as well as one violation of 18 U.S.C. § 924(c). *Id.* at 655. He was sentenced to concurrent terms of 168 months' imprisonment on each of the drug counts and 60 months on the § 924(c) count to run consecutively. *Id.* at 657. The Fourth Circuit held that the district court had not abused its discretion by opting not to hold a resentencing hearing on the drug counts after granting the petitioner's § 2255 motion as to the § 924(c) count. *Id.* at 667. Rather, the district court "'corrected' Hadden's original sentence" in that it "removed the error from Hadden's original sentence . . . by excising the unlawful 60 month term on the § 924(c) count and re-entering Hadden's original 168 month term on the drug counts." *Id.* (brackets omitted). The court in *Hadden* clarified that "the district court generally may not make a prisoner's sentence *more onerous* without conducting a resentencing[,]" but that there "the Government did not seek to enhance Hadden's 168 month sentence on his remaining drug counts, and the district court did not, in fact, increase that portion of his earlier sentence[.]" *Id.* at 668–69 (emphasis added).

The *Hadden* court rejected the petitioner's argument—like the one Gill advances here— that the "sentence-package theory" entitled him to a resentencing. *Id.* at 669. That theory recognizes that "a sentence is not merely the sum of its parts" and applies when an "appellate court vacates and remands a prisoner's sentence because of a sentencing error," in which case "the

30

district court may not simply re-enter the non-offending portions of the original sentence, but must conduct a new resentencing hearing to reformulate the entire sentence package." *Id.* The doctrine did not apply in *Hadden* because "the *district court* itself—by striking the § 924(c) sentence and reentering the remaining sentence—indicated that it was satisfied with the resulting sentence." *Id.* (emphasis in original). The Fourth Circuit emphasized that "nothing in the sentence-package theory forbids the district courts from doing what the text of § 2255 clearly permits: 'correct[ing]' a prisoner's unlawful sentence without conducting a formal 'resentenc[ing].'" *Id.*

The Court concludes that here, as in *Hadden*, a resentencing is not necessary, and that the appropriate remedy is to remove the three terms of 480 months' incarceration imposed for the § 924(c) counts from Gill's sentence and leave the remaining term of 480 months for the single violation of § 846 intact. The Court of course recognizes that "a sentence is not merely the sum of its parts" and, if the record indicated that a different outcome might result, the Court would exercise its discretion to hold a resentencing. However, the record supports a 480-month sentence on the single drug conspiracy count.

In calculating the base offense level for the § 846 count, the Presentence Report ("PSR") prepared in Gill's case states that "[d]uring the course of the drug conspiracy, three victims were murdered in furtherance of the conspiracy." (PSR at 5.) Thus, the PSR applied United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(d)(1) (Nov. 2007) for a drug offense during which "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States," which cross-references to the offense level for murder under § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder). (*Id.*)

31

Gill admitted to killing three individuals during the period of the drug conspiracy "[f]rom in or about 1999, up to April 2007," (Crim. Information at 1), and the factual stipulation supports a finding that those killings resulted in first-degree murder as defined by § 1111(a) if committed within the special maritime or territorial jurisdiction of the Court. (*See* Plea Agreement at 4–5.) Accordingly, the base offense level for Count One is 43 under § 2A1.1, and, with a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), results in a total offense level of 41. (PSR at 5, 7.) Combined with a criminal history category of IV (PSR at 8), the appropriate Guidelines range on Count I is 360 months to life imprisonment. *See* U.S.S.G., Sentencing Table. Gill agrees with the applicable offense level, criminal history category, and guidelines range. (Reply Supp. Mot. Vacate at 30 n.10 (citing PSR at 5–10).) Thus, he concedes that the 480-month sentence falls within the applicable guidelines range for Count One, even with the § 924(j) Counts removed, and the Court concludes, after reflecting on all of the factors set out in 18 U.S.C. § 3553, that it remains an appropriate sentence without the need to conduct a new hearing.

## VI.    *Conclusion*

For the foregoing reasons, Gill's Motion to Vacate Convictions pursuant to 28 U.S.C. § 2255 (ECF Nos. 186, 196, 238) will be granted by separate Order and will be reflected in an Amended Judgment and Commitment Order. His convictions on Counts Two, Three, and Four of the Judgment entered against him on September 19, 2008 (ECF No. 170) will be vacated. His sentence of 480 months' imprisonment on Count One will remain in place. An Amended Judgment will issue reflecting the corrected sentence.

DATED this 20 day of January, 2023.

BY THE COURT:

James K. Bredar
Chief Judge